Estate of Smith: McGlone and another, Claimants, Plaintiffs, vs. Fairchild, Executor, Defendant. [Two appeals.]

*March 4—March 31, 1953.*

For the plaintiffs there was a brief by *Robertson & Hoe-breckx,* attorneys, and *E. Harold Hallows* of counsel, and

oral argument by *Mr. Hallows* and *Mr. Albert G. Frackelton,* all of Milwaukee.

For the defendant there was a brief by *Whyte, Hirschboeck & Minahan* of Milwaukee, and oral argument by *Herbert C. Hirschboeck.*

CURRIE, J. The merits of claimants' claim against the estate of Madeleine Smith, deceased, are not before us on these appeals, but only the procedural question of whether Arthur W. Fairchild, as executor, is required to produce certain former wills and codicils of the deceased, or copies thereof, and to testify as to contents thereof.

If such former wills and codicils had been found among the papers of the deceased, which were in her possession at the time of death, such wills and codicils would be admissible in evidence if their contents were otherwise material or relevant to the issue of the controversy being tried, irrespective of the coincidence that the executor who took over the custody of said instruments after the death of testatrix was an attorney and said wills and codicils had been drafted either by him or one of his law partners. Under such a state of facts, the question of whether said wills and codicils constituted privileged communications between client and attorney would not be presented.

However, there appears in the record in this case an affidavit of Fairchild stating certain undisputed facts, and we quote from such affidavit as follows:

"Affiant, in his capacity as executor, does not have possession of any wills or codicils made by Madeleine Smith subsequent to November 13, 1934, and prior to June 11, 1947, the date of her last will and testament admitted to probate herein, nor of any copies of any such wills or codicils. For many years prior to 1932 and continuously thereafter affiant has been and is a partner in the law firm formerly named Miller, Mack & Fairchild and now continuing under the name of

Fairchild, Foley & Sammond. All wills and codicils of Madeleine Smith made during the period from the death of Clement C. Smith on February 14, 1935, to June 11, 1947, or copies thereof, which are in existence and of which affiant has any knowledge, are in possession of affiant and his law partners as Madeleine Smith's attorneys and came to their possession in the confidential relationship of client and attorney."

Fairchild testified upon his adverse examination that all of such wills and codicils had been drafted either by him or by one of his law partners. However, this last fact would appear not to be material on the issue of whether such prior wills and codicils in the possession of Fairchild, or his law firm, constituted privileged communications on the part of testatrix because 1 Wharton, Evidence (3d ed.), p. 563, sec. 576, states that the privilege extends "to written instruments held by counsel or attorneys on behalf of clients."

Our statute as to privileged communications between attorney and client is sec. 325.22, Stats., reading as follows:

"An attorney or counselor at law shall not be allowed to disclose a communication made by his client to him, or his advice given thereon in the course of his professional employment. This prohibition may be waived by the client, and does not include communications which the attorney needs to divulge for his own protection, or the protection of those with whom he deals, or which were made to him for the express purpose of being communicated to another, or being made public."

As originally enacted in 1878, the statute consisted of but the first sentence, and in *Will of Downing* (1903), 118 Wis. 581, 591, 95 N. W. 876, this court stated with respect thereto:

"All the authorities, including the two recent adjudications from this court, agree that the section of the statute in question is nothing more than a re-enactment of the common law."

Thereafter in 1927 the statute was amended by sec. 19, ch. 523, Laws of 1927, to add the second sentence to be found in our present statute, which amendment originated as part of a revisor's bill, and a revisor's note thereto stated that the purpose was to "express important and well-established exceptions theretofore to be found in the decisions of the courts;" so that the statute as so amended continued to be declaratory of the common law.

There is perhaps no decided case which has been cited more often as expressing the common law with respect to the application of the rule of privileged communications between attorney and client in litigation arising after the death of a client than the English case of *Russell v. Jackson* (1851), 9 Hare, 387 (68 Eng. Reprint 558). This case was cited by the United States supreme court in *Glover v. Patten* (1897), 165 U. S. 394, 17 Sup. Ct. 411, 41 L. Ed. 760, and by the courts of last resort of many of our sister states. This court quoted from *Russell v. Jackson* in *Will of Downing, supra,* as follows (p. 592):

" *'The reasons of the rule which protects from disclosure communications made in professional confidence apply in cases of conflict between the client or those claiming under him, and third persons,* but do not apply in cases of testamentary disposition by the client as between different parties, all of whom claim under him. The privilege does not belong to the executors as against the next of kin, but, following the legal interest, is subject to the trust, and incident to which the legal interest is subject.' " (Italics supplied.)

The italicized portion of the foregoing quotation from *Russell v. Jackson* appearing in the opinion in *Will of Downing, supra,* is directly applicable to the issue before us in the case at bar, if the claimants stand in the position of "third persons" who are asserting a claim adverse to the estate of testatrix, instead of claiming "under" the testatrix as does the executor. However, counsel for claimants state in their brief:

"These claimants claim under the deceased. They are not strangers making a claim against the deceased. . . . they are claiming not adverse to the testatrix' interest but certain specific property through the testatrix which she acquired from her husband."

We cannot follow the logic of such contention. If claimants were claiming as legatees under the will of testatrix, or as her heirs at law, they would be claiming under or through the testatrix. However, they do not so claim but on the contrary their claim is based upon breach of contract by testatrix which of necessity makes the same adverse to testatrix and her estate. Therefore, inasmuch as claimants are not claiming under or through the testatrix but are asserting an adverse claim against the estate represented by the executor, who does claim under the testatrix, the common-law rule of privileged communications between client and attorney embodied in sec. 325.22, Stats., applies to the prior wills and codicils, and the learned trial court rightly held that Fairchild was not required to produce them, or to testify to their contents.

Counsel for claimants rely upon the recent decision of this court in *Estate of Landauer* (1952), 261 Wis. 314, 52 N. W. (2d) 890, 53 N. W. (2d) 627, as authority that the rule of privilege does not apply in the instant case. *Estate of Landauer* involved a will contest in which the contestant alleged that the instrument propounded as the last will of the deceased had been procured by undue influence. Attorney Meissner was a witness to such will and the issue before this court was whether Meissner was required to produce certain prior wills in his possession and to testify as to their contents. This court held that Meissner was required to produce such former wills in his possession, and to testify as to their contents, as were relevant and material to the issues in the case, and that any privilege as to such former wills had been waived by testator in asking Meissner to act as witness on

the last-executed will. The ground for arriving at such conclusion was that the privilege is for the protection of the client and not the attorney, and it would not be to the interest of testator that his property be disposed of in a manner that did not reflect his true intention, as would be the case if the execution of his purported last will had been induced as the result of the undue influence exerted upon him by some third person. Testator's interest therefore would best be served if the attorney, whom he had requested to witness the instrument purporting to be his last will, would be permitted to divulge all communications, including the contents of prior wills in his possession, which were relevant and material as to the question of the validity of such will. As was said *Estate of Young* (1908), 33 Utah, 382, 388, 94 Pac. 731, 17 L. R. A. (N. S.) 108 (which case was cited in the majority opinion in *Estate of Landauer*) :

"If, therefore, the document produced is not actually his will, but rather that of another who induced him by undue influence over him to make it, can it be said that the deceased wants such a will established as his own?"

While in both the *Landauer Case* and in the instant case the attorney, who witnessed the last will of the deceased, had prior wills of the deceased in his possession, the similarity ceases with this like factual situation because of the difference in the issues presented. In the *Landauer Case* the validity of the last will was at issue, while in the instant case the last will of testatrix was admitted to probate without contest, and it is conceded by claimants that such instrument does constitute the last will and testament of the decedent. There is therefore no reason in this case to resort to any prior wills to determine the validity of said instrument so propounded and admitted to probate as the last will and testament of testatrix. This clearly distinguishes the *Landauer Case*.

Inasmuch as it is our considered judgment that the former wills and codicils of the deceased in the possession of Fair-

child and his law firm constitute privileged communications to her counsel by Madeleine Smith, deceased, so that the provisions of sec. 325.22, Stats., apply in the present litigation involving a claim made against her estate, he is not competent to testify therein to any of the contents thereof. We perceive no reason why any exception should be made as to that part of the contents of said instruments which relate to the appointment of an executor, and therefore that portion of the order which requires Fairchild to answer the certified question as to whether he was named as executor in such former wills and codicils must be reversed.

*By the Court.*—That part of the order appealed from by claimants is affirmed; that part of the order appealed from by the executor is reversed.